UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEPHEN M. GLASSER, Regional
Director of the Seventh Region of the
National Labor Relations Board, for
and on behalf of the NATIONAL
LABOR RELATIONS BOARD,

       Petitioner,

v.                                 Case No. 1:09-CV-223

ADT SECURITY SERVICES, INC.,        HON. GORDON J. QUIST

       Respondent.
_____/

**MEMORANDUM OPINION AND ORDER DENYING PRELIMINARY INJUNCTION**

The Regional Director of the National Labor Relations Board seeks a preliminary injunction pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), to require Defendant to recognize and bargain with Local 131 of the International Brotherhood of Electrical Workers, AFL-CIO. The Court heard oral argument from both parties.

For about 29 years, Local 131 has been the recognized bargaining unit of the Kalamazoo, Michigan supervised service personnel and installers (service techs) of ADT Security Services, Inc. ADT withdrew recognition of Local 131 when ADT consolidated its Kalamazoo service area with its Grand Rapids, Michigan, service area. At that time, ADT eliminated its Kalamazoo service facility and Kalamazoo service supervision. The Kalamazoo service techs now report to management in Grand Rapids and come to the Grand Rapids office weekly for parts. However, the merger did not effectively change the location of the service techs because they park their trucks at their homes and drive to their customers' residences and businesses from their homes each morning.

After a hearing, an administrative law judge (ALJ) found that ADT engaged in unfair labor practices within the meaning of Sections 2(6), (7) and (8), and 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 152(6), (7) and (8), and 158(a)(1) and (5), by withdrawing recognition of Local 131 and by not bargaining with Local 131 regarding certain changes that ADT imposed on the former Kalamazoo reporting service techs – overtime eligibility, vacation eligibility, and unpaid travel time. The ALJ ordered ADT to recognize Local 131 as the bargaining unit of the former Kalamazoo service techs and bargain with Local 131 regarding changes in the terms and conditions of employment. ADT claims that Local 131 is no longer an appropriate bargaining unit representative for the Kalamazoo employees because it does not have the support of a majority of the service techs at the Grand Rapids office following its consolidation of the Kalamazoo and Grand Rapids offices.

The issue in this case is whether Local 131 is still an appropriate bargaining unit for ADT's employees who historically, regularly and primarily work on job sites in the Kalamazoo area, as distinguished from the Grand Rapids area. Neither the parties nor the Court has any serious quarrel with the facts as found by the ALJ, so those facts are adopted, but additional facts may be referred to in this Memorandum Opinion.

### The Standard of Review

Even though the Regional Director's findings are entitled to "wide, though not unbridled" deference from this Court, *NLRB v. Catherine McAuley Health Ctr.*, 885 F.2d 341, 344 (6th Cir. 1989), it is equally true that this Court retains discretion in deciding whether to enter an injunction as requested by the Regional Director. *Schaub v. Detroit Newspaper Agency,* 154 F.3d 276, 279 (6th Cir. 1998); *Calatrello v. Automatic Sprinkler Co.*, 55 F. 3d 208, 214 (6th Cir. 1995).

**The Parties' Positions**

In arguing that the Kalamazoo employees retained their identity as a bargaining unit, the Regional Director and the ALJ rely primarily upon the fact that these employees have bargained as a unit for about 29 years. They also note that: 1) the Kalamazoo service techs have been and continue to be paid less than the service techs working primarily in Grand Rapids; 2) ADT recognizes Kalamazoo as a separate service area; 3) ADT regards Kalamazoo as a separate labor market (ostensibly justifying the pay differential); 4) overtime and travel compensation were computed differently for the Kalamazoo service techs than they are for Grand Rapids service techs; and 5) ADT maintains two on-call lists for service techs working in the Kalamazoo area - one for residential service emergencies and another for emergent commercial service - and a single on-call list for service techs working in the Grand Rapids area. The ALJ stated that "a historic bargaining relationship will not be disturbed absent compelling circumstances," citing *Canal Carting, Inc.,* 339 NLRB 969 (2003). The ALJ found that there were no "compelling circumstances" justifying such a disturbance.

**The Court's Legal Analysis**

The Court will grant the Regional Director's request for a preliminary injunction if: 1) there is "reasonable cause" to believe that an unfair labor practice occurred; and 2) injunctive relief is "just and proper." *Calatrello,* 55 F.3d at 212.

**Reasonable Cause to Believe That an Unfair Labor Practice Occurred**

Reasonable cause is a "relatively insubstantial burden." *Id*. (internal quotation omitted). The Regional Director need only provide "some evidence" in support of the petition and demonstrate that its theory of liability "is substantial and not frivolous." *Id*. The Regional Director explains:

>The Board has ruled that when an employer consolidates its operations and transfers a preexisting bargaining unit of employees to a new location where it already employs a group of unrepresented employees, it has a duty to recognize and bargain with the union **so long as** the unit has maintained its separate identity. In determining whether a pre-existing bargaining unit remains a separate appropriate unit following such a transition, the Board and courts look at factors including the similarity of skills, interests, duties, and working conditions between employees in the existing unit and employees in the new group; the functional integration, including employee interchange and contact; the employer's organizational and supervisory structure; the extent of union organization amongst employees, and the bargaining history. (Emphasis added.)

(Pet'r's Br. at 13-14 (citations omitted).) Consistent with the Regional Director's multi-factor approach the Sixth Circuit has stated that the following factors should be considered::

>1) similarity in skills, interests, duties, and working conditions; 2) functional integration of the [facility], including interchange and contact among the employees, 3) the employer's organization and supervisory structure; 4) the bargaining history; and 5) the extent of union organization among the employees.

*Armco, Inc. v. NLRB*, 832 F.2d 357, 362 (6th Cir.), *cert. denied* 486 U.S. 1042 (1987).

The ALJ put special emphasis on the bargaining history, giving the other community of interests factors little consideration. In this court's judgment, the authority upon which the ALJ and the Regional Director relied for having done so is readily distinguishable from the instant case and the multi-factor test should be applied. The agreed upon multi-factor test when properly applied, leads to the conclusion that the former Kalamazoo service techs no longer have a separate identity from their counterparts at the consolidated Grand Rapids office, and that a single unit comprising all service techs working out of the Grand Rapids office is appropriate.

The ALJ and the Regional Director argue that "a historic bargaining relationship will not be disturbed absent compelling circumstances." (ALJ Op. at 8 (citing *Canal Carting, Inc.*, 339 NLRB 969, 970 (2003).) However, the Board in *Canal Carting* wrote that "[r]ather than pursue *solely a community-of-interest analysis,* the Regional Director should have considered whether compelling circumstances warranted disturbing the historical bargaining units." *Canal Carting,*

339 NLRB at 969 (emphasis added).  An established bargaining history is entitled to significant weight in the community of interests analysis, but it is not dispositive.  *Mass. Soc'y for Prevention of Cruelty to Children v. NLRB*, 297 F.3d 41, 46 (1st Cir. 2002).  *Canal Carting* is significantly different from the instant case.  In *Canal Carting*, there was no change of any kind in the operations of the employer, which historically was a single employer with two separate bargaining units.  Rather, there was simply a naked attempt by the Teamsters, the labor organization representing the Carting employees, to expand its bargaining unit to include the Sanitation employees, who were already in a bargaining unit represented by the International Federated Employees.  In those circumstances the Board wrote that "the Regional Director failed properly to consider the importance of bargaining history in making his determination." *Canal Carting*, 339 NLRB at 969.

The facts of *Armco* are also very different from the facts in the instant case.  Armco purchased a coke plant for $100 Million which was only one mile from its steel producing blast furnaces.  The workers in the coke plant had always been represented by the Oil, Chemical and Atomic Workers ("OCAW").  After the acquisition, Armco sought to accrete the coke workers into the Steelworkers bargaining unit in the steel plant.  The coke workers did not move to the steel plant.  The Sixth Circuit examined the community of interest factors, including the coke workers' long bargaining history, and concluded that they did not merit accretion.  *Armco*, 832 F.2d at 362. The *Armco* court wrote that the ALJ and NLRB were correct in finding that: 1) the coke workers and steelworkers had dissimilar skills, duties, and working conditions; 2) the coke workers worked in a more hazardous environment; 3) the coke workers' training was substantially different; 4) the carcinogenic conditions in the coke plant were a constant hazard to the coke workers; 5) the coke workers worked separately from the steelworkers in a "separate plant with a long bargaining

5

history and a long union relationship ("this fact alone suggests the appropriateness of a separate bargaining unit.") (emphasis added); 6) the plants remained separate; 7) no machinery was transferred between the plants, 8) the coke plant continued to maintain its own telephone exchange, credit union, and time clock; 9) the coke workers continued to perform the same work, by the same methods, and using the same machinery; 10) most employees retained the same supervisors; 11) the only real change was an increase in production; 12) there was no employee interchange between the coke and steel plants except for a small one-way exchange; and 13) it was unlikely that steelworkers would want to transfer to the coke plant. *Armco*, 832 F.2d at 363. *Armco* also noted that the employer's organizational structure may have militated in favor of accretion and that wages, hours, and terms of employment were generally uniform, but such factors did not undermine the reasonableness of the Board's decision. *Id*. at 364.

Examining the factors set forth by the Regional Director and *Armco*, including the bargaining history, the Court notes the following:

1) <u>Similarity in skills, interests, duties, and working conditions</u>: The Kalamazoo and Grand Rapids service techs are identical in all these respects. In fact, these employees have the same uniforms, are subject to the same work rules, and have the same employee handbook (except to the extent that the handbook might conflict with a collective bargaining agreement), receive their assignments in the same manner), etc. This factor favors a single bargaining unit.

2) <u>Functional integration of the plant, including interchange and contact among the employees</u>: There is no plant. The Kalamazoo and Grand Rapids employees all drive their trucks home at day's end. There was and is no functional integration on a daily basis - except that, and this is an important exception, now all of the service

6

       techs are supervised from Grand Rapids by the same supervisors, and the Kalamazoo area techs, like at least some other Grand Rapids supervised service techs, pick up their parts from Grand Rapids instead of Kalamazoo. In this respect the Kalamazoo employees are in no different position, for example, than the Traverse City, Michigan, service techs who also report to Grand Rapids. The Court notes that Traverse City is much farther from Grand Rapids (about 2-1/4 hours) than are the Kalamazoo employees (about 50 minutes). So, the Kalamazoo employees are more likely to have contact with Grand Rapids employees regarding assistance than are other so-called "Grand Rapids employees." In fact, the so-called Grand Rapids area goes all the way up to Mackinac City, which is about 240 miles and 3-3/4 hours from Grand Rapids. The point is that the only possible point of integration for the Kalamazoo service techs has occurred – they now have common supervision with the other Grand Rapids supervised service techs. Finally, as Kalamazoo service techs work in the Grand Rapids area when needed, and vice-versa, there is some interchange and integration between the Kalamazoo and Grand Rapids service techs, at least from a management perspective. This factor favors a single bargaining unit.

3) <u>The employer's organizational and supervisory structure</u>: As pointed out, all of the Kalamazoo and other Grand Rapids supervised service techs are supervised from Grand Rapids. In addition, as pointed out by the ALJ, both before and after the consolidation into Grand Rapids, the Kalamazoo and Grand Rapids service techs "have been dispatched by a national dispatching center in Rochester, New York, which usually assigns the service tech based upon how close the service need was

7

to the house of the tech." Service techs living in the Kalamazoo area would usually service customer needs in the Kalamazoo area, Traverse City in Traverse City, Mackinac City near Mackinac City, and so forth. This does not show any cohesion whatsoever among the Kalamazoo service techs. It only shows that ADT service techs, as a group, have little or no cohesion – each being assigned where it is most convenient for the employee and most economical for ADT. This factor favors a single bargaining unit.

4) <u>The bargaining history</u>: This factor actually cuts both ways. On the one hand, the so-called Kalamazoo based employees had their own bargaining unit and history so long as ADT had a separate Kalamazoo service facility and supervision. On the other hand, the bargaining history of ADT is that the service tech bargaining units are determined by the particular office from which they are supervised – in this case, Grand Rapids after the consolidation. This factor is neutral.

5) <u>The extent of unionization among employees</u>: The Kalamazoo employees were unionized. The Grand Rapids employees were not. There were and are more Grand Rapids employees than Kalamazoo employees. This factor is neutral.

In its decision, the ALJ is critical of ADT because it did not "acknowledge or discuss the undisputed fact that the former Kalamazoo employees continue to be paid at the Kalamazoo contractual rate or that Director of Labor Relations Nixdorf admitted that Kalamazoo was a separate labor market." The separate lower rate paid the Kalamazoo service techs is the union bargained rate. The immediate question regarding the separate labor market is "separate from what?" Grand Rapids might be a separate labor market from Kalamazoo, but so is Benton Harbor, which was in ADT's so-called "Kalamazoo" territory before the consolidation. Muskegon,

8

Ludington, Traverse City, Leelanau Peninsula, and Mackinac City are all within the so-called ADT Grand Rapids territory, but, like Kalamazoo are separate labor markets from Grand Rapids.

The ALJ relies upon the fact that ADT did not "absorb" the Kalamazoo employees and that these employees continued to do most of their work in the Kalamazoo area. Of course there was no absorption in a physical location – because like all ADT employees they, in essence, worked out of their houses and trucks. They do not work in a plant. Unlike the sanitation workers in *Canal Carting*, they did not even report to a facility on a regular basis. The Court thinks this factor cuts against the Regional Director because the Kalamazoo employees are now like every other ADT service tech in the Grand Rapids territory – working near their homes, in their local communities, and reporting to Grand Rapids. The only possible point of absorption – common supervision – has occurred.

The Regional Director and ALJ cite the fact that the Kalamazoo employees are paid less than the Grand Rapids employees. "Thus, on the basis of the wage rate alone, the Kalamazoo employees were not absorbed, and they remain a separate identifiable unit." (ALJ Op. at 9.) No authority is given for this absolute statement, and it seems contrary to the cases this Court has read, and even contrary to the Regional Director's recitation of a multi-factor test.

The Regional Director and ALJ cite the fact that the collective bargaining agreement refers to the Kalamazoo "service territory." True, but from ADT's management perspective there once was and is a Kalamazoo service territory, which, incidentally, is not confined to the Kalamazoo area. Except for facilitating service tech assignments, that territory was wiped out when the Kalamazoo service facility and management was moved to Grand Rapids. That is the whole point – there was a consolidation of staff and management into Grand Rapids.

9

Regarding the argument that the Kalamazoo service techs are subject to "remote supervision" from Grand Rapids, the Court fails to see how that prevents absorption of the Kalamazoo employees into Grand Rapids for purposes of identifying a bargaining unit. The Kalamazoo employees have this in common with other Grand Rapids supervised employees as far away as Mackinac City. Remote supervision is what gives the Kalamazoo service techs "commonality" with other ADT employees in West Michigan – not what makes them a unit.

The Court could go on, but it is unnecessary. ADT can handle itself on appeal. Suffice it to say at this time, this Court believes that neither the Regional Director nor the ALJ has considered the factors that even the Regional Director says must be considered. Instead, they have simply found that there was a long bargaining history for service techs who used to report to Kalamazoo. In the Court's judgment, this is not a "substantial and not frivolous" justification for requiring the continued recognition of Local 131 in light of the remaining community of interests factors.

Therefore,

**IT IS HEREBY ORDERED** that Regional Director's petition for a preliminary injunction is **DENIED**.


Dated: May 14, 2009                                   /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE

10